# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 2, 2022          Decided May 2, 2023

No. 21-1260

JOHN M. CRIM,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

Appeal from a Decision and Order of
the United States Tax Court

———

*Joseph A. DiRuzzo, III* argued the cause for appellant. With him on the briefs was *Daniel M. Lader*.

*Matthew S. Johnshoy*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Michael J. Haungs*, Attorney. *Julie C. Avetta*, Attorney, entered an appearance.

Before: WILKINS and WALKER, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

Dissenting opinion filed by *Circuit Judge* WALKER.

ROGERS, *Senior Circuit Judge*:    The Internal Revenue Service assessed penalties pursuant to 26 U.S.C. § 6700 against John Crim in connection with his promotion of a tax shelter scheme. Crim filed a motion to recuse and disqualify all Tax Court judges on separation of powers grounds. The Tax Court denied the motion and granted summary judgment for the IRS, rejecting Crim's statute of limitations defenses. On appeal Crim contends that the presidential power to remove Tax Court judges, 26 U.S.C. § 7443(f), violates the separation of powers and that assessment of Section 6700 penalties was time-barred by 26 U.S.C. § 6501(a) or by 28 U.S.C. § 2462. Upon *de novo* review of the Tax Court's legal determinations, *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014), this court affirms the Tax Court's judgment for the following reasons.

## I.

Judges of the Tax Court "may be removed by the President[] after notice and opportunity for public hearing[] for inefficiency, neglect of duty, or malfeasance in office."  26 U.S.C. § 7443(f).  In *Kuretski v. Commissioner*, 755 F.3d 929 (D.C. Cir. 2014), the court held that the removal power does not violate the constitutional separation of powers.  Tax Court

judges neither exercise "judicial power" "in the particular sense employed by Article III," *id.* at 941, nor "legislative power under Article I," *id.* at 943. Because "the Tax Court exercises its authority as part of the Executive Branch," *id.*, the court reasoned, removal does "not involve the prospect of presidential removal of officers in another branch," *id.* at 939. In *Kuretski* the court acknowledged that the Tax Court is independent and is not an Executive agency. First, "the Tax Court 'remains independent of the Executive . . . Branch[],'" *Kuretski*, 755 F.3d at 943 (quoting *Freytag v. Comm'r*, 501 U.S. 868, 891 (1991)), and this "described the Tax Court's functional independence rather than . . . its constitutional status," *id.* Second, in 1969, Congress, "in departing from the prior language describing the Tax Court as an executive 'agency,' . . . aimed to emphasize the Tax Court's independence as a 'court' reviewing the actions of the IRS." *Id.* at 944 (citing S. Rep. No. 91-552, at 302).

In 2015, Congress amended Section 7441 to provide that "[t]he Tax Court is not an agency of[] and shall be independent of, the executive branch of the Government." Consolidated Appropriations Act, Pub. L. No. 114-113, § 441, 129 Stat. 2242, 3126 (2015). Of course, the Supreme Court has cautioned that "congressional pronouncements are not dispositive" of the status of a "governmental entity for purposes of separation of powers analysis under the Constitution." *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 51 (2015). Here Congress sought only to "ensure that there is no appearance of institutional bias" when the Tax Court adjudicates disputes between the IRS and taxpayers. S. Rep. No. 114-14, at 10. Crim has not demonstrated that

4

congressional action has undermined the separation of powers analysis adopted in *Kuretski.*

## II.

Crim contends alternatively that assessment of Section 6700 penalties on July 26, 2010 for activities in 1999-2003, *Crim v. Comm'r*, 117 T.C.M. (RIA) *1, *2, *6 (2021), was time-barred by either 26 U.S.C. § 6501(a)'s three-year statute of limitations or by 28 U.S.C. § 2462's five-year statute of limitations. Every court to have considered the argument has rejected it. The Tax Court ruled that Crim's statute of limitations defenses were challenges to his underlying liability, "forfeited" under 26 U.S.C. § 6330(c)(2)(B) by failing to raise them prior to the Collection Due Process hearing. *Id.* at *4. Assuming his statute of limitations defenses were properly before it, *id.* at *5, the Tax Court rejected them on the merits.

## A.

Section 6501(a) provides that "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years *after the return was filed* (whether or not such return was filed on or after the date prescribed)," with "'return' mean[ing] the return required to be filed by the taxpayer." 26 U.S.C. § 6501(a) (emphasis added). Crim maintains that, because "penalties and liabilities provided by this subchapter . . . shall be assessed and collected in the same manner as taxes," *id.* § 6671(a), Section 6501(a) applies to Section 6700 tax-shelter-promotion penalties. We join the Second, Fifth, and Eighth Circuits in holding that Section 6501(a) is inapplicable to assessment of Section 6700 penalties.

*See Barrister Assocs. v. United States*, 989 F.2d 1290, 1296-97 n.1 (2d Cir. 1993); *Sage v. United States*, 908 F.2d 18, 24-25 (5th Cir. 1990); *Lamb v. United States*, 977 F.2d 1296, 1296-97 (8th Cir. 1992). Here, the statute of limitations is triggered only when a "return [i]s filed."

Statutes of limitations against the government are "strictly construed." *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 734 (D.C. Cir. 2005). Congress must "clearly manifest[] its intention" that the government be bound. *United States v. Nashville, C. & St. L. Ry.*, 118 U.S. 120, 125 (1886). Section 6700 penalties are assessed against individuals who represent, with reason to know such representation is false, that there will be a tax benefit for participating in or purchasing an interest in an arrangement the individual assisted in organizing. 26 U.S.C. § 6700(a). The conduct penalizable "do[es] not pertain to any particular tax return or tax year." *Sage*, 908 F.2d at 24. Instead liability turns on the promoter's activities or gross income derived by the promoter, not on whether a promoter's client decides to claim such benefit on a tax return. *See id.* Were Section 6501(a) applicable to Section 6700 penalties, the limitations period on assessment would begin to run in view of factors unrelated to the source and scope of penalty liability.

Exceptions to Section 6501(a)'s statute of limitations underscore that it does not apply to Section 6700 penalties and demonstrate, contrary to our dissenting colleague's view, that a promoter's client's return could not trigger the statute of limitations. The exceptions provide that the statute of limitations does not apply to "a false or fraudulent return with the intent to evade the tax," 26 U.S.C. § 6501(c)(1), "a willful attempt in any matter to defeat or evade [a] tax," *id.* § 6501(c)(2), or "failure to file a return," *id.* § 6501(c)(3). The

exceptions align with the Tax Code's general approach of exempting fraudulent activity from statutes of limitations. In *Mullikin v. United States*, 952 F.2d 920 (6th Cir. 1991), the Sixth Circuit held Section 6501(a) inapplicable to the closely analogous 26 U.S.C. § 6701 penalties for aiding and abetting understatement of tax liability, relying in part on the Tax Code's approach to fraudulent activity. *Id.* at 928. Returns filed by a client not claiming the unlawful tax benefit for which the promoter is penalized would not fall within the exceptions. On our dissenting colleague's view, it is to those returns that the statute of limitations would apply. Yet the oddity of his approach appears in the difficulty of determining which of the taxpayer's lawful tax returns in subsequent tax years would trigger the limitations period.

Our dissenting colleague maintains that the IRS' position that Section 6671(a) does not render Section 6501(a) applicable to *assessment* of Section 6700 penalties is inconsistent with the IRS' position that Section 6671(a) renders 26 U.S.C. § 6502(a)'s limitations period on collection applicable to *collection* of Section 6700 penalties. But there is no inconsistency: Section 6502(a), unlike Section 6501(a), does not make the filing of a return the triggering event for its limitations period. 26 U.S.C. § 6502(a). Rather Section 6502(a)'s triggering event is "assessment." *Id.*

Nor does our dissenting colleague's reliance on two other penalty provisions of the Tax Code advance his cause. Section 6672 applies to employer withholding obligations, and the statute of limitations is "the period provided by section 6501," 26 U.S.C. § 6672(b)(3). He observes that Section 6501 applies to Section 6672 even though it is a "tax penalty that does not require the filing of a tax return." Dis. Op. 4. "The Internal

Revenue Code requires employers to withhold from their employees' paychecks money representing employees' personal income taxes and Social Security taxes." *United States v. Energy Resources Co.*, 495 U.S. 545, 546 (1990). Under Section 6672, the individual responsible for these obligations is liable for a penalty equivalent to the unpaid sum. 26 U.S.C. § 6672. As acknowledged by the Sixth Circuit in *United States v. Neal*, 93 F.3d 219 (6th Cir. 1996), a case cited by our dissenting colleague, Dis. Op. 4, where an employer "is required to remit withheld taxes, it [is] also required to file Form 941s," which is a return that accounts for the amount withheld in the taxable period. *Id.* at 223 (citing 26 C.F.R. § 31.6011(a)). This is the relevant return for the statute of limitations period "[s]ince [Section 6672] assessment is 'based on' the underlying liability of the employer, the filing of the employer's employment tax return triggers the period of limitation applicable to the penalty." *Robinson v. Commissioner*, 117 T.C. 308, 318 (2001). By contrast, assessment of Section 6700 penalties against a promoter is not based on the underlying liability of the client.

Second, Section 6696(d)(1) sets the limitations period on penalties against tax preparers for errors and misstatements in the tax returns they prepared. Our dissenting colleague argues that Section 6501(a)'s statute of limitations could be triggered by a return filed by a promoter's client because some of the Tax Code's limitations periods, like Section 6696(d)(1), begin to run when a return is filed by someone other than the penalized individual. Dis. Op. 4. Yet the plain text of Section 6696(d)(1) provides those penalties are assessed with respect to the returns themselves, which are the source of liability for the penalties: Section 6696 penalties, "shall be assessed within 3 years after the *return or claim for refund with respect to which the penalty*

*is assessed* was filed." 26 U.S.C. § 6696(d)(1) (emphasis added). By contrast, liability for Section 6700 penalties arises independent of returns.

**B.**

Crim's alternative contention is that 28 U.S.C. § 2462's five-year statute of limitations applies. Appellant's Br. 42-46. It provides that, "[e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." 28 U.S.C. § 2462.

The Second and Eighth Circuits persuasively reason that Section 2462's statute of limitations is inapplicable to Section 6700 penalty assessment. *See Capozzi v. United States*, 980 F.2d 872, 874-75 (2d Cir. 1992); *Lamb*, 977 F.2d at 1297. Similarly, the Sixth Circuit has held Section 2462 inapplicable to analogous Section 6701 penalties for aiding and abetting understatement of tax liability. *Mullikin*, 952 F.2d at 929. These courts point out that Congress has "otherwise provided" a relevant statute of limitations in Section 6502(a) that requires collection of an assessed tax penalty within ten years of assessment. *See id.*; *see also Lamb*, 977 F.2d at 1297. Distinguishing assessment of a tax penalty from "an action, suit or proceeding," 28 U.S.C. § 2462, the Second Circuit states in *Capozzi*, 980 F.2d at 872, that Section 2462 "implicate[s] some adversarial adjudication, be it administrative or judicial," while

"*assessment* of a penalty . . . is an *ex parte* act" that "is merely the determination of the amount of the penalty and the official recording of the liability," *id.* at 874. So too this court concluded in *3 M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994), noting that the Second Circuit's "action, suit or proceeding" reasoning was "consistent with [its] analysis" that EPA proceedings under the Toxic Substances Control Act were "action[s], suit[s] or proceeding[s]" in part *because* they are "adversarial adjudications." *Id.* at 1459 n.11.

Accordingly, because neither Crim nor our dissenting colleague has shown that Congress clearly manifested an intention the government be bound by the statutes of limitation on which they rely, and because Crim's separation of powers claim is barred under the analysis in *Kuretski*, the judgment of the Tax Court is affirmed.

WALKER, *Circuit Judge*, dissenting:

John Crim promoted an illegal tax shelter. Seven years later, the Internal Revenue Service assessed tax penalties against him. Pointing to a statute of limitations in the tax code, Crim says those assessments came too late.

That argument has some merit. Congress enacted a three-year statute of limitations for tax assessments. 26 U.S.C. § 6501(a). Congress also defined taxes to include tax penalties. *Id.* § 6671(a). Here, the IRS assessed tax penalties against Crim. So the three-year statute of limitations applies to his case.

Because the Tax Court found that the statute of limitations did not apply, I would reverse and remand for the Tax Court to consider whether the statute of limitations prevents the IRS from collecting Crim's penalties.

I

John Crim is a convicted tax cheat. Between 1999 and 2003, he ran an illegal tax shelter, encouraging investors to evade federal taxes. *See United States v. Crim*, 451 F. App'x 196, 200 (3d Cir. 2011). In 2010, while Crim was in prison, the IRS assessed that he owed $256,000 in tax-shelter-promotion penalties. Crim did not seek a hearing to contest that assessment. When he got out, the IRS notified him that it intended to collect.

Crim contested the penalties at a hearing. He argued that the IRS could not collect because its *assessment* of penalties came too late. The Tax Code's catch-all statute of limitations on assessments, he said, meant that the IRS had just three years to assess penalties against him, yet it waited seven years to do so.

Unpersuaded, the hearing officer rejected Crim's argument because he presented "[n]o statu[t]e" to support his position. JA 78.

Crim appealed to the Tax Court. It affirmed, agreeing with the hearing officer that tax-shelter-promotion penalties have no statute of limitations for assessments. It also rejected Crim's new argument that it couldn't decide his case because the Tax Court's structure violates the separation of powers.

Crim appealed to this Court. We review the Tax Court's "legal conclusions" and "grant of summary judgment" de novo. *Ryskamp v. Commissioner of Internal Revenue*, 797 F.3d 1142, 1147 (D.C. Cir. 2015); *see* 26 U.S.C. § 7482(a)(1).

Applying that standard, I agree with the majority that the Tax Court's structure is constitutional. But because Crim's statute-of-limitations argument has some merit, I would vacate and remand to the Tax Court.

II

The tax code's three-year statute of limitations for tax assessments applies to the tax-shelter-promotion penalties levied against Crim.

True, when Congress applies a statute of limitations to the government, it must speak clearly. *See Amoco Production Co. v. Watson*, 410 F.3d 722, 734 (D.C. Cir. 2005); *cf. BP America Production Co. v. Burton*, 549 U.S. 84, 95-96 (2006) (though "statutes of limitations are construed narrowly against the government," that rule has "no application" when "the text of the relevant statute" is clear).

But here, the text is clear.

1.  The tax code's general statute of limitations for tax assessments says "[t]he amount of any tax imposed by [the tax code] shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a).

2.  The tax code defines "tax" to include "tax penalties": "any reference . . . to 'tax' . . . shall be deemed also to refer to . . . penalties." *Id.* § 6671(a).

3.  So in effect, the general statute of limitations says: "any [*penalty*] . . . shall be assessed within 3 years after the return was filed." *Id.* § 6501(a) (emphasis added).

4.  Because a tax-shelter-promotion penalty is a "penalty," the statute of limitations applies. *Id.* § 6700 (setting out tax-shelter-promotion penalties).

The IRS concedes that this textual argument works for other statutes of limitations in the tax code. It even accepts that the limitations period for tax *collections* in § 6502(a) covers collection of tax-shelter-promotion penalties. JA 160; *see also Mullikin v. United States*, 952 F.2d 920, 927 (6th Cir. 1991) (accepting that § 6502 applies to tax penalties).

Note why that is so. The limitations period for tax collections applies to tax-shelter-promotion penalties *only* because the tax code defines a "tax" to include a "tax penalty." *See Capozzi v. United States*, 980 F.2d 872, 875 n.2 (2d Cir. 1992) ("[T]hough section 6502(a) speaks only of the collection of *taxes*, 26 U.S.C. § 6671 states that any reference to a 'tax' is also a reference to a penalty."). If that logic works for tax collections, it should also work for tax assessments.

True, the limitations clock for tax assessments starts to run "after [a tax] return [is] filed," and tax-shelter-promotion penalties may be levied even if no tax return is ever filed. 26 U.S.C. § 6501(a). But that proves only that in some tax-shelter-promotion penalty cases, the statute of limitations never starts running because no return ever *triggers* it. It does not prove that the statute of limitations does not apply at all. For example, a statute of limitations applies to fraud, but it is not triggered "until after . . . discover[y] . . . [of] the alleged deception." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

For the IRS's theory to persuade, it would have to be true that no tax return could *ever* trigger the statute of limitations for assessments in a tax-shelter-promotion case. But that is not self-evident. Why couldn't the statute of limitations be triggered by a return filed by a tax shelter's client? Oral Arg. Tr. 9-10 (giving hypotheticals). Other statutes of limitations in the tax code are triggered when returns are filed by someone other than the penalized person. *See, e.g.*, 26 U.S.C. § 6696 (setting out the statute of limitations for tax-preparer penalties).

Plus, the statute of limitations for assessments expressly applies to another tax penalty that does not require the filing of a tax return. Section 6672 imposes a penalty when a person "willfully fails to collect . . . and pay over" to the IRS a tax he is "required to collect." 26 U.S.C. § 6672(a). The IRS may levy that penalty even when a tax return is not filed. *See United States v. Energy Resources Co.*, 495 U.S. 545, 547 (1990) (describing liability under § 6672); *see also United States v. Neal*, 93 F.3d 219, 221 (6th Cir. 1996) (noting that § 6672 does not "impose[] a requirement to file a return").

Consider this example. An employer is required to collect federal income taxes from his employees' paychecks. He fails to do so. Can the IRS penalize him even though he has not

filed a return?  Yes.  *See* 26 U.S.C. § 6672(a).  And does the statute of limitations in § 6501(a) apply?  Again, yes.  To collect the penalty, the IRS must mail a notice "before the expiration of the [statute-of-limitations] period provided by section 6501 for the assessment of such penalty."  *Id.* § 6672(b)(3).  Of course, if no return is ever filed, the statute of limitations in § 6501 is not *triggered*, and the IRS has an infinite amount of time to mail the required notice.  *Cf.* § 6501(c)(3) (if no return is filed "the tax may be assessed . . . at any time").  But if a return *is* filed, the clock starts running.

If Congress expressly made the catch-all statute of limitations in § 6501(a) applicable to one tax penalty that can be assessed without a tax return (§ 6672), there's no reason to think Congress did not make it applicable to Crim's tax penalty (§ 6700).  Both tax penalties are considered a "tax" for limitations purposes.  *Id.* § 6671(a).  And neither tax penalty requires the filing of a tax return.

To be sure, it is harder to figure out which tax return triggers the limitations clock for tax-shelter-promotion penalties than it is for penalties under § 6672 (tax collector penalties) and § 6696 (tax preparer penalties).  Maj. Op. 6.  But that's no reason to ignore the clear text of the catch-all statute of limitations in § 6501(a).  *Cf. United States v. Long*, 997 F.3d 342, 356 (D.C. Cir. 2021) ("courts may not . . . set aside the plain text unless the absurdity and injustice of [doing so] would be so monstrous that all mankind would . . . unite in rejecting the [plain text's] application" (cleaned up)).

Rather than deciding, as the majority does, that no return can ever trigger § 6501(a)'s statute of limitations in a tax-shelter-promotion case, I would let the Tax Court determine, on a case-by-case basis, whether a tax return has triggered the

limitations clock.   Today, I would resolve only whether § 6501(a) *applies* to tax-shelter-promotion penalties.[1]

The tax code's text unambiguously suggests that it does. 26 U.S.C. §§ 6501(a), 6671(a).[2]

### III

Crim also claims that the Tax Court's structure violates the separation of powers.   He says a recent change to the Tax Court's authorizing statute means that it is no longer part of the executive branch.   And that, he argues, creates an interbranch-removal problem because the President has the power to remove tax judges.

If the Tax Court *were* outside of the executive branch, the President's power to remove its judges would be problematic. But because the Tax Court is inside the executive branch, there is no such problem.

---

[1] True, the statute of limitations likely was not *triggered* in Crim's case.  When the Third Circuit affirmed Crim's conviction, it said that "[b]ased on instructions provided by [Crim's firm], many of [its] clients did not file federal tax returns." *United States v. Crim*, 451 F. App'x 196, 200 (3d Cir. 2011).  And in this litigation, Crim's counsel said that he did not "dispute" that many of Crim's clients did not file tax returns.  Oral Arg. Tr. 9.  But on the record before us, I cannot rule out of the possibility that one of Crim's clients filed a relevant return.  So remand to the Tax Court is appropriate.

[2] As I have explained, I disagree with those circuits that have held otherwise. *See Barrister Associates v. United States*, 989 F.2d 1290, 1296-97 n.1 (2d Cir. 1993); *Sage v. United States*, 908 F.2d 18, 24-25 (5th Cir. 1990); *Lamb v. United States*, 977 F.2d 1296, 1296-97 (8th Cir. 1992).

True, in 2015 Congress amended the Tax Court's authorizing statute to say the "Tax Court is not an agency of, and shall be independent of, the executive branch of the Government." 26 U.S.C. § 7441. But that amendment did not change the Tax Court's position within our system of government. So the Tax Court remains part of the executive branch, just as it was before the amendment. *See Kuretski v. Commissioner*, 755 F.3d 929, 939 (D.C. Cir. 2014) ("the Tax Court exercises its authority as part of the Executive Branch").

If Congress wishes to change the Tax Court's constitutional position, it can. But to do so, it must do more than simply tell the judiciary that the Tax Court is outside the executive branch. *See Department of Transportation. v. Association of American Railroads*, 575 U.S. 43, 51 (2015). Instead, Congress would need to alter the court's substantive features by amending, for instance, the powers it exercises and who controls it. *Cf. Stern v. Marshall*, 564 U.S. 462, 486–87 (2011) (statutory amendment to the structure of the Bankruptcy Court did not change the "powers . . . wielded" by bankruptcy judges).

Here, Congress's amendment did not meaningfully change the Tax Court's structural features. As before, the President can remove tax judges. 26 U.S.C. § 7443(f). That power gives the President some control over the Tax Court, suggesting that it is part of the executive branch. *See Bowsher v. Synar*, 478 U.S. 714, 727-732 (1986) (Congress's power to remove the Comptroller General meant that he was part of the legislative branch).

Plus, Congress's amendment does not change the Tax Court's powers. Those powers are, and have always been, executive. *See Direct Marketing Association v. Brohl*, 575 U.S. 1, 9 (2015). Since at least 1798, Congress has vested the

power to assess and collect taxes in the executive branch. *See, e.g.*, Act of July 9, 1798, ch. 70, §§ 8, 20 1 Stat. 580, 585, 588 (authorizing executive-branch "commissioners" to assess taxable property and providing an administrative appeals process for contesting "inequality or error" in those assessments).

Rather than changing the Tax Court's structure, Congress's statement that the court is "independent of[ ] the executive branch" merely confirms that tax judges have statutorily fixed terms and for-cause removal protection. *See* 26 U.S.C. §§ 7441, 7443(e)-(f). Of course, tax judges cannot be truly and fully "independent" because "lesser officers must remain accountable to the President, whose authority they wield." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020). I express no opinion about whether tax judges' removal protection is constitutional. *Cf. id*

\* \* \*

The Tax Court does not violate the separation of powers. But because the tax code's statute of limitations for tax assessments applies to tax-shelter-promotion penalties, I would vacate and remand to the Tax Court.

I respectfully dissent.